# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01624-WJM-MJW

COLORADO ENVIRONMENTAL COALITION;
INFORMATION NETWORK FOR RESPONSIBLE MINING;
CENTER FOR NATIVE ECOSYTEMS;
CENTER FOR BIOLOGICAL DIVERSITY;
SHEEP MOUNTAIN ALLIANCE;

    Plaintiffs,

v.

OFFICE OF LEGACY MANAGEMENT;
UNITED STATES DEPARTMENT OF ENERGY;

    Defendants.

_____

### FEDERAL DEFENDANTS' MOTION TO REOPEN AND FOR RECONSIDERATION OF OCTOBER 18, 2011 ORDER

_____

Federal Defendants respectfully submit this motion to reopen based on good cause pursuant to Fed. R. Civ. P. 59(e) to alter or amend the Court's Opinion and Order entered on October 18, 2011 ("Order"). *See* D.C. Colo. L.Civ. R. 41.2. Since briefing on this matter concluded, Federal Defendants' significant efforts towards preparing the Programmatic Environmental Impact Statement provide grounds for the Court to reconsider both the necessity for injunctive relief in this case and, at a minimum, the proper scope for such relief. In addition, Federal Defendant seek to clarify, and to the extent necessary to amend, the Order's potential proscription of any activities on all ULP lands. A proposed order is attached hereto as Exhibit A. On November 15, 2011, pursuant to Local Rule 7.1, counsel for Federal Defendants contacted counsel for Plaintiffs, who stated that, given the timing of the conferral, they do not consent to the relief sought herein.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 08-cv-01624-WJM-MJW

COLORADO ENVIRONMENTAL COALITION;
INFORMATION NETWORK FOR RESPONSIBLE MINING;
CENTER FOR NATIVE ECOSYTEMS;
CENTER FOR BIOLOGICAL DIVERSITY;
SHEEP MOUNTAIN ALLIANCE;

    Plaintiffs,

v.

OFFICE OF LEGACY MANAGEMENT;
UNITED STATES DEPARTMENT OF ENERGY;

    Defendants.
_____

**FEDERAL DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO REOPEN AND FOR RECONSIDERATION OF OCTOBER 18, 2011 ORDER**

_____

Federal Defendants respectfully submit this memorandum in support of their motion to reopen based on good cause pursuant to Fed. R. Civ. P. 59(e) to alter or amend the Court's Opinion and Order entered on October 18, 2011 ("Order"). *See* D.C. Colo. L.Civ. R. 41.2. Since briefing on this matter concluded, Federal Defendants have taken numerous steps in furtherance of the Programmatic Environmental Impact Statement ("PEIS") for the Uranium Leasing Program ("ULP") that continue to demonstrate their commitment to completing the PEIS. These significant efforts provide grounds for the Court to reconsider both the necessity for injunctive relief in this case and, at a minimum, the proper scope for such relief. Second, Federal Defendants seek to clarify, and to the extent necessary, to amend, the Order's potential proscription of any activities on all ULP lands so that the Court's injunction does not bar (1) on-

2

the-ground activities necessary to conduct the PEIS environmental review process and (2) a limited class of actions necessary to preserve health, safety and the environment on the lease tracts. Declaration of Laura Kilpatrick at ¶¶ 6-7 ("Kilpatrick Decl."), attached hereto as Exhibit B. A proposed order is attached hereto as Exhibit A. On November 15, 2011, pursuant to Local Rule 7.1, counsel for Federal Defendants contacted counsel for Plaintiffs, who stated, given the timing of the conferral, they do not consent to the relief sought herein.

## BACKGROUND

Under the ULP, the Department of Energy ("DOE") administers lease tracts on 25,000 acres for uranium mining in southwestern Colorado to support domestic energy needs. Plaintiffs alleged that DOE's decisions to continue the ULP for another ten years in the July 2007 Programmatic Environmental Assessment ("PEA")/Finding of No Significant Impact ("FONSI") and approve 54 site-specific agency actions implementing the program violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.,* the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq*., and the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq.*.

On June 15, 2011, DOE submitted to the Federal Register a Notice of Intent to prepare a PEIS for the ULP. 76 Fed. Reg. 36097-36100 (June 21, 2011). DOE determined that a new PEIS would be appropriate to analyze further the reasonably foreseeable environmental impacts, including site-specific impacts, of a range of alternatives for management of the ULP for the remainder of the 10-year period covered by the PEA. 76 Fed. Reg. at 36099. On June 30, 2011, DOE notified the lessees that the EIS was estimated to take 12-15 months and during that time, DOE would not approve any ground disturbing activities on the lease tracts. Dkt. #85. On July

21, 2011, DOE published in the Federal Register a notice of public scoping meeting and extension of scoping period. Dkt. #89.

In its October 18, 2011 Order, the Court invalidated the 2007 PEA/ FONSI, stayed the 31 active leases, enjoined DOE from issuing any new leases, enjoined DOE from "approving any activities on lands governed" by the ULP, "and administratively closed the case during the pendency of the injunction." Order, Dkt. #94 at 52.

After the Court issued its Order, DOE's Office of Legacy Management ("OLM") sent a letter dated October 25, 2011, providing formal notice of the Court's injunction and stay of the leases to all of the ULP lessees, and to all of the Colorado state agencies that have authority over mining safety, public health, the environment, and wildlife. Among the state agencies that OLM notified are the Colorado Division of Reclamation, Mining and Safety (CDRMS); the Colorado Department of Public Health and Environment (CDPHE); and the Colorado Division of Wildlife (CDW). Kilpatrick Decl. ¶8.

## STANDARD OF REVIEW

A motion for reconsideration filed within 28 days of the date of the judicial order for which reconsideration is sought (as in this case) is subject to Rule 59(e). The motion must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued. *Phelps v. Hamilton,* 122 F.3d 1309, 1324 (10th Cir. 1997) (internal quotation marks omitted). Relief under Rule 59(e) also is appropriate when "the court has misapprehended the facts, a party's position, or the controlling law." S*ervants of the Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000); *see also Wedbush Morgan Securities, Inc. v. Kirkpatrick Pettis*

*Capital Management, Inc.,* 2007 WL 1058947, *1 (D. Colo. 2007) (granting motion to clarify so scope of order was clear to all parties).

## ARGUMENT

### I. The Injunctive Relief Ordered Is Not Justified By Balancing the Equities

The entry of sweeping injunctive relief as contained in the final judgment is not — and in this case cannot be—warranted by a balancing of the traditional equitable factors and also constitutes manifest legal error. Before issuing any injunction, a district court must determine that it is warranted by a balancing of the equities under the traditional four-factor test. *Monsanto Co. v. Geertson Seed Farms*,130 S.Ct. 2743, 2757 (2010). The Supreme Court has made clear that the finding of a statutory violation by a government agency does not necessarily justify the entry of an injunction. *See id.* (finding district court erred to the extent it considered an injunction to apply automatically in the case of violations of NEPA ); *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311, 313 (1982). On the contrary, the entry of an injunction may be awarded only upon a separate showing that the plaintiff is entitled to such relief. *Winter v. NRDC,* 129 S. Ct. 365, 375-376 (2008). Given that DOE is preparing a PEIS and had advised the lessees that it would not approve ground-disturbing activities in furtherance of mining, Plaintiffs in this case are not entitled to injunctive relief. Although Federal Defendants earlier had requested additional proceedings on remedy to ensure that any relief be narrowly tailored to the injuries demonstrated by Plaintiffs, Dkt. #82 at 38, neither party has had the opportunity to weigh in on this issue.

In *Monsanto*, 130 S. Ct. at 2758-60, the Supreme Court found that the district court went too far by precluding an agency from taking future action in accordance with procedures established by law. Monsanto involved a challenge to the Animal Plant Health Inspection

5

Service's ("APHIS's") decision to deregulate genetically altered "Roundup Ready Alfalfa" or "RRA." *Id*. at 2750. Plaintiffs brought suit under the APA, arguing that APHIS's action did not comply with NEPA. *Id.* After finding a NEPA violation, the district court issued an order prohibiting APHIS from granting a deregulation petition — even in part — without preparing an environmental impact statement under NEPA. *Id*. at 2757.

According to the Supreme Court, such relief was not warranted under the traditional equitable factors governing injunctive relief. *Id.* at 2758. Since the agency had not yet taken action regarding any partial deregulation of RRA, and plaintiffs would have an opportunity to challenge any such decision, the Supreme Court found that judicial review of a partial deregulation was premature and an injunction was not needed to guard against any present or imminent risk of harm to plaintiffs. *Id.* Therefore, the Court found the district court's injunction was not supported by the required showing of irreparable harm. *Id.*

Here, too, there is no irreparable injury arising from the PEA. Nor could there be, given that DOE is preparing the PEIS. During the pendency of the environmental analysis for the PEIS, no ground disturbing activities will occur except as necessary to gather information to prepare the PEIS or to protect human health and safety and the environment. *See supra*. Here, the Court found irreparable harm because "DOE acted on the EA/FONSI in tangible ways," which had tangible effects." Order, Dkt. #94 at 53. The Court did not find there would be "irreparable harm unless the injunction was issued," *Wyoming v. U.S. Dept. of Agric*., 2011 WL 5022755, *47 (10th Cir. 2011), but rather that past harms gave rise to irreparable harm. Order, Dkt. #94 at 53. Moreover, the Court made no finding about the risk of future irreparable harms, which is required for a permanent injunction. *Id.* Indeed, without such a finding, declaratory relief would suffice. *See Steffel v. Thompson*, 415 U.S. 452, 466 (1974) ("Congress plainly intended

6

declaratory relief to act as an alternative to the strong medicine of the injunction."). Irreparable harm can never be assumed, and here the burden rests with Plaintiffs to demonstrate that such harm is likely to occur. Plaintiffs have not done so. On this ground as well, Federal Defendants request that this Court reconsider both the necessity for injunctive relief in this case or, at a minimum, the proper scope for such relief.

## II. DOE's Recent Actions Demonstrate Its Commitment To Complete The PEIS

Reconsideration of the Court's order granting injunctive relief is also warranted based on new information about the status of the PEIS review process. Since briefing for this matter was completed on September 7, 2011, DOE's environmental review process for the PEIS has moved forward in a number of ways. Among other things, DOE has taken two additional key steps further evincing its commitment to prepare the PEIS: (1) DOE retained Argonne National Laboratory ("ANL") to prepare the PEIS; and (2) DOE developed a draft schedule for completion of the PEIS. Kilpatrick Decl. ¶4. DOE's recent actions suggest that enjoining a program for which DOE has already committed to additional environmental analysis is neither necessary nor narrowly tailored. *Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 962 (10th Cir.2002) (injunction must be narrowly tailored); *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 220 (2d Cir. 2003) (same).

DOE's recent, concrete, and specific efforts in support of the PEIS constitute new evidence that could not have been raised in the prior briefing. *See Phelps*, 122 F.3d at 1324 (newly discovered evidence appropriate grounds for Rule 59(e) motion). At that time, DOE was in the very early stages of planning for the PEIS. *Id.* Now that DOE has secured funding and retained a contractor, DOE has been able to move the PEIS forward in a meaningful way, including the development of a draft schedule on September 29, 2011. Kilpatrick Decl. ¶4.

To that end, DOE has taken the following steps in furtherance of the PEIS:

1. On July 28, 2011, DOE sent invitations to 19 federal agencies, state agencies, county commissions, and Native American tribes to become cooperating agencies in the preparation of the PEIS. Of those 19 entities, nine (including the EPA) have agreed to become cooperating agencies to date. Kilpatrick Decl. ¶4.

2. Between August 8 and 11, 2011, OLM held four public scoping meetings, in Montrose, Colorado (65 participants from the public); Telluride, Colorado (85 participants); Naturita, Colorado (31 participants); and Monticello, Utah (one participant). Kilpatrick Decl. ¶4.

3. OLM received, and reviewed, 287 scoping comments from the public before the scoping period ended on September 9, 2011. Kilpatrick Decl. ¶4.

4. On September 29, 2011, DOE and ANL collaborated to prepare a working draft schedule for the completion of the ULP PEIS, and for consultation under the Endangered Species Act ("ESA") with the U.S. Fish and Wildlife Service ("USFWS"). Kilpatrick Decl. ¶4. The schedule is an exhibit to the Kilpatrick Declaration.

5. Employees of OLM and ANL met in Chicago on September 21 and 22, 2011, to develop the scope of the Draft PEIS and the working draft schedule. Kilpatrick Decl. ¶4.

6. At the request of the USFWS, OLM's NEPA Compliance Manager prepared, and sent to the USFWS on November 7, 2011 for its review, a preliminary list of listed species and critical habitat areas. In its letter transmitting that preliminary list, OLM requested a letter from the USFWS concurring with or commenting upon that that list, and requested that the USFWS provide any other information it considers appropriate during the ESA consultation process. Kilpatrick Decl. ¶4.

7. ANL continues the process of data gathering for the PEIS. Kilpatrick Decl. ¶4.

Based on the information available to it, and the fact that it had "no timetable . . . for when the EIS will be completed," this Court found that "there is insufficient evidence before the Court that the planned EIS will indeed be completed" Order, Dkt. #94 at 11-13. However, now there is not only a timetable for this Court's review, but also DOE has hired a contractor, received public comment, and engaged cooperating agencies in the environmental review

8

process. The involvement of other government actors and the public demonstates that DOE is committed to its environmental review process. This serves as grounds for the Court to reconsider the necessity for injunctive relief, or at least its scope, in this case. *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (injunction "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs" ); *Keener v. Convergys Corp.*, 342 F.3d 1264, 1269 (11th Cir. 2003) (an injunction "should be tailored to restrain no more than what is reasonably required to accomplish its ends") (citation omitted).

      Although the Court found that DOE had violated NEPA in preparing the PEA/FONSI, the Court did not find that DOE and/or OLM had violated NEPA or the ESA by approving particular activities during the pendency of the PEIS process, because there was no such claim before the Court. As discussed below, NEPA does not prohibit all activities during preparation of an EIS, and particularly during preparation of a PEIS. Nor does the ESA prohibit all agency activities during consultation. A court must presume that a federal agency will comply with NEPA and other applicable law in the future, regardless of a finding of a past violation. *See, e.g.*, *Sierra Club v. Penfold*, 857 F.2d 1307, 1319 (9th Cir. 1988) ("It would be a mistake for us to assume that because an EA was inadequate in the past, [the federal agency] will not comply with NEPA in the future."); *Colorado Wild, Heartwood v. U.S. Forest Service*, 435 F.3d 1204, 1221 (10th Cir. 2006) (holding that past cases in which a federal agency had been found to violate a Council on Environmental Quality ("CEQ") NEPA regulation "certainly fail . . . to rebut the presumption that the [federal agency] is entitled to here . . . that it will observe this CEQ regulation."). DOE and/or OLM is entitled to a presumption that it will comply with the NEPA and ESA regulations in approving activities during the PEIS and ESA consultation processes, and as in *Monsanto*, Plaintiffs would have an opportunity to challenge any such approvals.

9

Therefore, an injunction barring DOE and/or OLM from approving future activities on the ULP lease tracts is overbroad and unwarranted. Federal Defendants respectfully request that the Court dissolve the injunction.

### III. Federal Defendants Seek Clarification of the Order to Allow Necessary and Lawful Activities

Federal Defendants request that this Court clarify or, in the alternative, amend the Order, which currently enjoins DOE "from approving <u>any</u> activities on lands governed by the ULMP, including exploration, drilling, mining and reclamation activities" Order, Dkt. #94 at 51. (emphasis added). Federal Defendants request that the Order — in lieu of prohibiting <u>any</u> activities on ULP lands —be narrowly tailored to allow DOE to take (1) actions necessary to support the PEIS review process, including consultation with the USFWS pursuant to the ESA, and (2) a limited class of actions necessary to preserve health, safety and the environment. Kilpatrick Decl. ¶¶6-7. Those necessary activities do not involve any irretrievable commitment of resources such as exploration, drilling, or mining. *Id.; see Friends of Southeast's Future v. Morrison*, 153 F.3d 1059, 1063 (9th Cir.1998) (finding no irreversible commitment of resources where the government retained absolute authority to decide whether any activities would occur).

As described *infra*, the broadly-worded injunction could be construed as imposing unnecessary burdens on necessary and lawful activity[1], including actions to support the PEIS

---

[1] Pursuant to Rule 59(e), the injunctive relief ordered is too broad to satisfy the requirements of Rule 65 of the Federal Rules of Civil Procedure and thus an amendment is appropriate. Rule 65(d) reads as follows:

> (1) *Contents.* Every order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required.
> (2) *Persons Bound.* The order binds only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents,

10

environmental process or to preserve health, safety and the environment. *Patsy's Brand*, 317 F.3d at 220 ("Injunctive relief should be narrowly tailored to fit specific legal violations. Accordingly, an injunction should not impose unnecessary burdens on lawful activity.") (internal citations and quotations omitted); *Garrison,* 287 F.3d at 962.  Given the Court's finding that the PEIS process is necessary, the effect of the Order's broad language to proscribe such NEPA-supporting activities presumably was not intended, and should be clarified. Order, Dkt. # 94 at 52; *see also Loughridge v. Chiles Power Supply Co., Inc.*, 431 F.3d 1268, 1275, 431 F.3d 1268 (10th Cir. Colo. 2005) (finding Rule 59(e) is the correct vehicle to correct manifest errors of law).

### A. Federal Defendants Seek Clarification of the Order to Allow Activities to Support the PEIS Environmental Review Process

First, Federal Defendants request that this Court modify the injunction to allow certain activities that are necessary to complete the PEIS' environmental analysis and DOE's consultation with the USFWS pursuant to the ESA.  Kilpatrick Decl. ¶¶5-7. These activities include the following:

   a. Preparation of NEPA documentation, including site characterization;

   b.  Cultural resource inventories; and

---

   servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

Here, as described above, the Order's prohibition on all activities on the ULP is overly broad as it could be read to proscribe legally-required and necessary activities.

By the same token, courts have also interpreted Rule 60(b)(5) as providing grounds for modification when, because of new or unforeseen circumstances, the injunction proves to be unworkable. *See Orantes-Hernandez v. Gonzales*, 504 F. Supp. 2d 825, 829-831 (C.D. Cal. 2007) (new factual circumstances justify modification of injunction); *see also David C. v. Leavitt*, 242 F.3d 1206, 1210 (10th Cir. 2001) (courts possess the equitable power to modify consent decrees when new circumstances so dictate). The additional detail concerning DOE's timetable for completing the EIS process constitutes a circumstance that was unforeseen at the time of this Court's decision. *See infra* at Section II.

11

    c. Surveys of endangered, threatened, and sensitive species.

Kilpatrick Decl. ¶6.

  As set forth in the draft schedule for the PEIS, DOE anticipates that these activities will take place during discrete time periods. *See* Kilpatrick Decl., Ex. A. Federal Defendants therefore seek clarification or amendment of the Order to allow the agency to continue onward with the PEIS environmental review and ESA consultation without fear of running afoul of the Order.

  **B. Federal Defendants Seek Clarification of the Order to Allow Activities to Protect Health, Safety and the Environment**

  Second, Federal Defendants seek leave of Court to perform specific beneficial reclamation activities necessary to protect the environment or public health and safety. CEQ's NEPA regulations[2] recognize that even while an EIS is being prepared, the agency may take at least some action in furtherance of that proposal, particularly when that EIS is for an entire program, as here. *See* 40 C.F.R. § 1506.1(a) ("no action concerning the proposal shall be taken which would: (1) Have an adverse environmental impact; or (2) Limit the choice of reasonable alternatives"); *id.* § 1506.1(c) ("While work on a required program environmental impact statement is in progress and the action is not covered by an existing program statement, agencies shall not undertake in the interim *any major Federal action c*overed by the program which may significantly affect the quality of the human environment unless such action" satisfies certain requirements) (emphasis added). While the PEIS is being prepared, Federal Defendants here seek to take a limited class of beneficial activities —not major federal actions —if and when

---

[2] "The CEQ regulations are binding on all federal agencies and provide guidance to the courts for interpreting NEPA requirements." *Oregon Natural Resources Council v. U.S. Forest Serv.,* 834 F.2d 842, 847 n. 5 (9th Cir. 1987).

12

necessary to avoid or mitigate potential or actual adverse environmental impacts. *See ONRC Action v. BLM*, 150 F.3d 1132, 1138 (9th Cir. 1998) (NEPA limitation on actions "is not without qualification," citing Section 1501.6, and noting that agency may take limited class of actions while EIS is being prepared); *Wildwest Institute v. Bull*, 472 F.3d 587, 590 (9th Cir. 2006) (limited class of actions allowed while PEIS was being prepared as they do not limit choice of alternatives). The ESA includes a similar provision that allows an agency to act during the pendency of a consultation so long as its steps do not amount an "irreversible or irretrievable commitment of resources …. [that have] the effect of foreclosing the formulation or implementation of any reasonable and prudent alternatives."  50 C.F.R. § 402.09 and 16 U.S.C.A. § 1536(d).

To that end, DOE's OLM personnel and the lessees are responsible for ensuring that the ULP lease tracts minimize adverse environmental effects, and have due regard for health and safety. *See* Public Land Order 459; *see also* 10 C.F.R. § 760.1(l), (n); Kilpatrick Decl. ¶¶7-8. Accordingly, OLM personnel and/or the lessees must continue to routinely inspect and monitor the ULP lease tracts to identify undesirable conditions that may occur. If and when such conditions are identified, OLM must be allowed to take or authorize the necessary actions required to mitigate the conditions.  These activities may include the following:

    a. Routine inspection and monitoring activities; and

    b. Protecting physical safety (necessitated by open mine portals, shafts, vents, and land subsidence), and environmental-hazard mitigation activities, including the mitigation of erosional features resulting from storm water runoff and adverse environmental conditions resulting from unauthorized entry and random acts of vandalism.

Kilpatrick Decl. ¶7.

To this end, during the past three years, OLM personnel have directed the following reclamation activities for the purpose of protecting physical safety and mitigating environmental hazards: (A) 24 open mine portals have been closed or gated to conserve bat habitat; (B) four mine shafts have been closed; (C) 32 mine vents have been closed; and (D) 19 land subsidence features have been backfilled. Kilpatrick Decl. at ¶7. During that same time period, there have been three major storm events causing significant erosion, and nine acts of vandalism or unauthorized entry. *Id.* These are the kinds of beneficial actions that OLM seeks leave to perform while the injunction is in place.

Even though the ULP leases are currently in an inactive status pursuant to the Order, it is possible that certain Colorado state agencies with jurisdiction over mining[3] may nevertheless exercise their regulatory authority to order a ULP lessee to take actions regarding a lease for the purpose of protecting health, safety and the environment. The governing regulations expressly recognize that lessees have duties to comply with any applicable state regulations. 10 C.F.R. 760.1(y) ("lease shall provide that the lessee is required to comply with all applicable State and Federal statutes and regulations"). For example, on September 30, 2011, CDRMS wrote to two ULP lessees (Cotter Corporation and Gold Eagle Mining, Inc) ordering them to prepare an Environmental Protection Plan (EPP) to comply with a recently-amended state statute. Kilpatrick Decl. at ¶7. The ULP lessees notified OLM of these orders. *Id.* When DOE obtains information as to what specific actions are necessary to comply with the orders during the stay, DOE will provide this information to the Court and Plaintiffs' counsel. DOE will also notify the

---

[3] *E.g.*, the Colorado Division of Reclamation, Mining and Safety (CDRMS); the Colorado Department of Public Health and Environment (CDPHE); and the Colorado Division of Wildlife (CDOW). As discussed *supra*, OLM notified these agencies of the Order.

Court and the Plaintiffs' counsel if and when DOE learns of any additional orders that are issued to ULP lessees by state regulatory agencies that might require activities on ULP leases during the period when those leases are stayed. *Id.*

The actions that Federal Defendants request that OLM and the ULP lessees be given leave of Court to perform are to maintain the environmental baseline conditions on the ULP lease tracts. Those necessary activities do not involve exploration, drilling, or mining, but rather ensure that no conditions on the ground develop that could threaten human health or safety or the environment. *Id*. "Courts confronted with NEPA violations regularly adopt interim measures to maintain the status quo, particularly if allowing agency action to go forward risks foreclosing alternative courses of action that the agency might have adopted following completion of an EIS." *Monsanto*, 130 S.Ct. at 2768. While the PEIS is being prepared, Federal Defendants thus request that this Court allow the DOE to adopt "interim measures to maintain the status quo" such as inspection activities and abating hazards (e.g., open mine features, storm water runoff and vandalism). *Id.*

## CONCLUSION

In light of the foregoing, Federal Defendants respectfully request that the Court reconsider the necessity for injunctive relief and dissolve the injunction or, at a minimum, amend the Order to clarify that the agency and the lessees may undertake certain necessary activities on lands governed by the ULP (1) in furtherance of preparation of the PEIS; and (2) to protect the health, safety and the environment.

**RESPECTFULLY SUBMITTED this 15th day of November 2011**

    /s/ *Marissa Piropato*
MARISSA PIROPATO

15

        Trial Attorney (MA Bar #651630)
        United States Department of Justice
        Environment and Natural Resources Division
        Natural Resources Section
        P.O. Box 663
        Washington, D.C. 20044-0663
        Telephone: (202) 305-0470
        Facsimile: (202) 305-0506
        marissa.piropato@usdoj.gov

        ANDREW A. SMITH
        Trial Attorney (NM Bar #8341)
        United States Department of Justice
        Environment and Natural Resources Division
        c/o U.S. Attorney's Office
        P.O. Box 607
        Albuquerque, New Mexico 87103
        Telephone: (505) 224-1468
        Facsimile: (505) 346-7205
        andrew.smith6@usdoj.gov

        JOHN H. MARTIN,
        Trial Attorney (CO Bar #32667)
        U.S. Department of Justice
        Environment and Natural Resources Division
        Wildlife and Marine Resources Section
        999 18th Street, South Terrace, Ste. 370
        Denver, CO 80202
        Telephone: (303) 844-1383
        Facsimile: (303) 844-1350 (
        john.h.martin@usdoj.gov

        Attorneys for Federal Defendants

Of Counsel:
STEPHEN DOVE
MONEKIA FRANKLIN
STEVEN MILLER
Office of General Counsel
United States Department of Energy

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2011, I caused a copy of the foregoing to be served through the Court's CM/ECF System to all parties.