**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No.  08-cv-01624-WJM-MJW

COLORADO ENVIRONMENTAL COALITION,
INFORMATION NETWORK FOR RESPONSIBLE MINING,
CENTER FOR NATIVE ECOSYSTEMS,
CENTER FOR BIOLOGICAL DIVERSITY, and
SHEEP MOUNTAIN ALLIANCE,

      Plaintiffs,

v.

OFFICE OF LEGACY MANAGEMENT, and
UNITED STATES DEPARTMENT OF ENERGY,

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR RECONSIDERATION**

---

      This matter is before the Court on Defendants' Motion to Reopen and for
Reconsideration of October 18, 2011 Order.  (ECF No. 95.)  Plaintiffs have filed a
Response to the Motion (ECF No. 100), and Defendants have filed a Reply (ECF No.
101).  The Court hereby REOPENS this action for the limited purpose of ruling on
Defendants' Motion for Reconsideration.  *See* D.C.COLO.LCivR 41.2.  Having carefully
considered the arguments presented, Defendants' Motion for Reconsideration is
GRANTED IN PART and DENIED IN PART.

## I.  BACKGROUND

      The Uranium Lease Management Program ("ULMP") is a uranium mining
program administered by Defendants in the Uravan Mineral Belt in Mesa, Montrose, and

San Miguel Counties in southwestern Colorado.  Plaintiffs brought this action to

challenge (1) Defendants' 2007 decision to expand the ULMP, (2) Defendants' issuance

of leases to uranium mining companies under the expanded ULMP, and (3) Defendants'

approvals of exploration or reclamation activities on certain lease tracts.

The Court, in its October 18, 2011 Opinion and Order, held that Defendants'

2007 Environmental Assessment ("EA") and Finding of No Significant Impact ("FONSI")

approving the expansion of the ULMP violated the National Environmental Policy Act

("NEPA") and Endangered Species Act ("ESA").  (ECF No. 94.)  As a result, the Court

invalidated the EA and FONSI, ordered Defendants to conduct a NEPA- and ESA-

compliant environmental analysis on remand, stayed the leases already issued by

Defendants, enjoined Defendants from issuing any new leases on ULMP lands, and

enjoined Defendants "from approving any activities on lands governed by the ULMP,

including exploration, drilling, mining, and reclamation activities" (collectively, the

"Injunction").  (*Id.* at 52.)

## II.  ANALYSIS

### A.    Parties' Arguments

In their Motion for Reconsideration (the "Motion"), brought under Federal Rule of

Civil Procedure 59(e), Defendants argue that:

(1)     the Injunction is not warranted and constitutes manifest legal error;

(2)     the Court should reconsider the Injunction given that Defendants have conducted

further steps in completing an Environmental Impact Statement ("EIS"); and

(3)     the Court should at least modify the Injunction to allow:

     (a)     activities on ULMP lands that are necessary to complete the EIS;

     (b)     activities on ULMP lands that are required to comply with orders from government regulatory agencies; and

     (c)     certain reclamation activities on ULMP lands.

In response, Plaintiffs argue that the Motion should be denied because Defendants failed to meaningfully confer with Plaintiffs prior to filing the Motion, and because none of the relief sought is warranted.

**B.      Legal Standard**

"A Rule 59(e) motion to alter or amend the judgment should be granted only to correct manifest errors of law or to present newly discovered evidence." *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997) (quotation marks omitted); *see also Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) ("Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.").

**C.      Discussion**

**1.      Meet-and-confer requirement**

Plaintiffs argue that the Motion should be denied because Defendants failed to meaningfully meet and confer prior to filing the Motion.  The Court agrees that Defendants' counsel's last minute efforts to meet and confer on the day of the deadline to file a timely Rule 59(e) motion were inadequate.  However, under the unique circumstances present here, in combination – namely, (1) counsel for Defendants did

make three attempts to contact counsel for Plaintiffs on the day of the deadline, but counsel for Plaintiffs did not respond until very late in the afternoon and then proposed meeting and conferring the next day, (2) the 28-day deadline to file a motion under Rule 59(e) is jurisdictional, and (3) the primary relief sought by Defendants is complete dissolution of the injunction, which makes the Motion comparable to a potentially dispositive motion, which is not subject to the meet and confer requirement under D.C.COLO.LCivR 7.1A.  The Court accordingly declines to deny the Motion on this ground.

### 2.      Whether the Court Committed Legal Error by Issuing the Injunction

Defendants first argue that the Injunction was not warranted because the Court failed to adequately evaluate the governing factors from *Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2756 (2010), and in particular the requirement of irreparable harm.  (ECF No. 95, at 5-7.)  The Court disagrees.  The Court carefully considered the *Monsanto* factors, applied them to the facts, and found the requisite irreparable harm.  (ECF No. 94, at 49-50.)  The Court did not clearly err in reaching this conclusion.  Therefore, the Court denies the Motion as to this argument.

### 3.      Further Steps in Completing EIS

Defendants also emphasize that they have completed significant new steps in working on an EIS, including creating a draft schedule for the EIS's completion.  (ECF No. 95, at 7-10.)  Defendants made similar arguments to the Court in their original Response brief, in which they argued that this action was prudentially moot because of Defendants' plan to create an EIS.  The Court rejected those arguments, finding

numerous reasons why the action was not prudentially moot.  (ECF No. 94, at 11-15.)

Although the Court emphasized in its Order that Defendants had not even yet created a

timetable for the completion of the EIS, the fact that a draft schedule has now been

created does not change the Court's conclusion, given all the other reasons expressed

by the Court for why the action was not prudentially moot.

### 4.    Activities Necessary to Complete EIS

Defendants also seek clarification of the Court's Order regarding activities on

ULMP lands that are necessary to complete the EIS.  (ECF No. 95, at 10-12.)  The

Court recognizes that its injunction prohibiting "any activities on lands governed by the

ULMP" is broad, and there is good cause to amend that portion of the Injunction.  (ECF

No. 94, at 52.)  Therefore, as ordered below, the Injunction will be amended to allow

those activities on ULMP lands that are absolutely necessary to conduct an

environmental analysis on remand regarding the ULMP that fully complies with NEPA,

ESA, all other governing statutes and regulations, and this Court's October 18, 2011

Opinion and Order.  As proposed by Defendants, the Court will require Defendants "to

provide notice to the Court and Plaintiffs . . . before any such activities beg[i]n . . . on the

[ULMP] lands."  (ECF No. 101, at 3.)

### 5.    Activities Necessary to Comply With Orders From State Regulatory Agencies

Defendants also seek clarification regarding activities on ULMP lands that are

necessary to comply with orders of government regulatory agencies.  (ECF No. 95, at

14-15.)  They point out that the Colorado Division of Reclamation, Mining and Safety

has already ordered two lessees to prepare an Environmental Protection Plan, and that

activities on ULMP lands may be necessary to comply with that Order.  Although this issue is to some degree not yet ripe, the Court finds good cause to modify the injunction to allow those activities on ULMP lands that are absolutely necessary to comply with an order from a federal, state, or local government regulatory agency.  As to these actions also, the Court will require Defendants to provide notice to the Court and Plaintiffs before any such activities begin on ULMP lands.

### 6.     Reclamation Activities

Defendants also contend that they should be allowed to conduct certain reclamation activities on the ULMP lands.  While Defendants' Motion and supporting documents did not provide enough detail to the Court to adequately analyze this request, Defendants' Reply brief and the accompanying Declaration of Steven R. Schiesswohl does.

The Court finds good cause to amend the Injunction to allow certain reclamation activities on ULMP lands.  Specifically, the Court will amend the injunction to allow those activities on ULMP lands that are absolutely necessary to remediate dangers to the public health, safety, and environment on ULMP lands caused by major storm events, acts of vandalism, or land subsidence.  (*See* ECF No. 101-1, ¶ 6.)  As to these actions, the Court will require Defendants to provide notice to the Court and Plaintiffs before any such activities begin, if possible.  However, if an emergency situation prevents Defendants from providing such notice before such activities begin, Defendants shall provide notice to the Court and Plaintiffs of such response activities no later than seven days after the activities began.

The Court will also amend the injunction to allow those activities on ULMP lands

6

that are absolutely necessary to maintain access roads; maintain safety berms and stormwater run-off control berms associated with existing mine dumps and mine yard facilities; maintain security fences and gates to limit public access to potentially hazardous areas; conduct inspections of existing mines to maintain safe access to mine workings; conduct environmental sampling of existing monitoring wells, and air sampling of exhaust air from existing mines; perform weed control of non-native noxious weeds; perform vegetation control around existing mine portal and vent hole openings to minimize fire potential; or maintain and repair mine equipment at existing mine yard facilities. As to these actions, the Court will not require Defendants to provide notice before conducting such activities, but will require Defendants to provide Plaintiffs (but not the Court) with bi-monthly (every 60 days) summaries of such activities that have been conducted.

Defendants will not be allowed to close or gate open mine portals, close mine shafts, or close mine vents, unless ordered to do so by a federal, state, or local government regulatory agency.

### III.  CONCLUSION

In accordance with the foregoing, the Court ORDERS as follows:

(1)    This action is REOPENED for the limited purpose of ruling on Defendants' Motion for Reconsideration;

(2)    Defendants' Motion for Reconsideration (ECF No. 95) is GRANTED IN PART and DENIED IN PART;

(3)    Defendants' Motion for Reconsideration is GRANTED in so far as the Court's injunction will be amended to allow Defendants; other federal,

state, or local governmental agencies; and/or the lessees to conduct <u>only</u> those activities on ULMP lands that are <u>absolutely necessary</u>:

(a)    to conduct an environmental analysis regarding the ULMP that fully complies with NEPA, ESA, all other governing statutes and regulations, and this Court's October 18, 2011 Opinion and Order;

(b)    to comply with orders from federal, state, or local government regulatory agencies;

(c)    to remediate dangers to the public health, safety, and environment on ULMP lands caused by major storm events, acts of vandalism, or land subsistence; and

(d)    to maintain access roads; maintain safety berms and stormwater run-off control berms associated with existing mine dumps and mine yard facilities; maintain security fences and gates to limit public access to potentially hazardous areas; conduct inspections of existing mines to maintain safe access to mine workings; conduct environmental sampling of existing monitoring wells, and air sampling of exhaust air from existing mines; perform weed control of non-native noxious weeds; perform vegetation control around existing mine portal and vent hole openings to minimize fire potential; or maintain and repair mine equipment at existing mine yard facilities.

(4)    In all other respects, Defendants' Motion for Reconsideration is DENIED;

(5)    As amended by this Order, this Court's ongoing injunction consists of the

following provisions:

(a)     Defendants' 2007 EA and FONSI are invalidated and have no further legal or practical effect;

(b)     The 31 leases currently in existence under the ULMP are stayed;

(c)     Defendants are enjoined from issuing any new leases on lands governed by the ULMP;

(d)     Defendants are enjoined from approving any activities on lands governed by the ULMP, including exploration, drilling, mining, and reclamation activities, _except that_ Defendants; other federal, state, or local governmental agencies; and/or the lessees are allowed to conduct _only_ those activities on ULMP lands that are _absolutely necessary_:

> (i)     to conduct an environmental analysis on remand regarding the ULMP that fully complies with NEPA, ESA, all other governing statutes and regulations, and this Court's October 18, 2011 Opinion and Order;
>
> (ii)    to comply with orders from federal, state, or local government regulatory agencies;
>
> (iii)   to remediate dangers to the public health, safety, and environment on ULMP lands caused by major storm events, acts of vandalism, or land subsidence; and
>
> (iv)    to maintain access roads; maintain safety berms and stormwater run-off control berms associated with existing

9

mine dumps and mine yard facilities; maintain security fences and gates to limit public access to potentially hazardous areas; conduct inspections of existing mines to maintain safe access to mine workings; conduct environmental sampling of existing monitoring wells, and air sampling of exhaust air from existing mines; perform weed control of non-native noxious weeds; perform vegetation control around existing mine portal and vent hole openings to minimize fire potential; or maintain and repair mine equipment at existing mine yard facilities.

(e)     If Defendants plan to conduct activities that are absolutely necessary to complete the EIS or to comply with orders from federal, state, or local government regulatory agencies, the Court orders Defendants to provide notice to the Court and Plaintiffs before any such activities begin;

(f)     If Defendants plan to conduct activities that are absolutely necessary to remediate dangers to the public health, safety, and environment on ULMP lands caused by major storm events, acts of vandalism, or land subsidence, the Court orders Defendants to provide notice to the Court and Plaintiffs before any such activities begin, if possible, but in any event shall be provided to the Court and Plaintiffs no later than seven days after such activities began;

(g)     If Defendants plan to conduct activities that are absolutely

necessary to maintain access roads; maintain safety berms and stormwater run-off control berms associated with existing mine dumps and mine yard facilities; maintain security fences and gates to limit public access to potentially hazardous areas; conduct inspections of existing mines to maintain safe access to mine workings; conduct environmental sampling of existing monitoring wells, and air sampling of exhaust air from existing mines; perform weed control of non-native noxious weeds; perform vegetation control around existing mine portal and vent hole openings to minimize fire potential; or maintain and repair mine equipment at existing mine yard facilities, the Court orders Defendants to provide Plaintiffs (but not the Court) with bi-monthly summaries of such activities that have been conducted;

(h)   After Defendants conduct an environmental analysis on remand that fully complies with NEPA, ESA, all other governing statutes and regulations, and this Court's October 18, 2011 Opinion and Order, Defendants may move the Court to dissolve this injunction;

(6)   If, at any point in the future, Plaintiffs or Defendants contemplate filing a motion for reconsideration under Federal Rule of Civil Procedure 60(b) (which the Court discourages), or Defendants contemplate filing a motion to dissolve the injunction following completion of their new environmental analysis, they shall first fully and meaningfully meet and confer with opposing counsel pursuant to D.C.COLO.LCivR 7.1A.

11

(7)     After entry of this Order, the Clerk of Court shall again administratively

        CLOSE this action, subject to the Court's continuing jurisdiction to enforce

        full compliance with this Order.

Dated this 27th day of February, 2012.

                                        BY THE COURT:


                                        _____
                                        William J. Martínez
                                        United States District Judge

12